IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| BRANDON PATRICK LINK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 13-1126 |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| DEPUTY WARDEN CMAR, | ) | |
| *Westmoreland County Prison*; PAUL S. | ) | |
| KUNTZ, *Court Administrator for Judge* | ) | |
| *John E. Blahovec*; BRYAN L. KLINE, | ) | |
| *Clerk of Courts Westmoreland County* | ) | Re: ECF Nos. 29 and 33 |
| *Courts*, WESTMORELAND COUNTY, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiff Brandon Patrick Link ("Plaintiff") has brought this civil rights action against Defendants Deputy Warden Cmar, Westmoreland County Prison ("Cmar"), Paul S. Kuntz, Court Administrator for Judge John E. Blahovec's Courtroom ("Kuntz"), and Westmoreland County (the County") (collectively, "Defendants"), asserting claims relative to Plaintiff's incarceration at the Westmoreland County Prison in 2013.[1] Plaintiff alleges that Defendants violated his rights provided by the Fourth Amendment to the United States Constitution by failing to promptly notify the State of Florida, where Plaintiff had other charges pending, that he was available "for

---

[1] Bryan L. Kline, Clerk of Court, Westmoreland County Courts, was also named as a Defendant in the Second Amended Complaint but has since been dismissed from the action. See ECF No. 43; 8/11/14 Text Order. In addition, although Plaintiff named the Westmoreland County Courts as a Defendant in the original Complaint filed in this matter, see ECF No. 5, and subsequently caused a pleading entitled "Summons in a Civil Case" to be served upon the Prothonotary of the Westmoreland Court of Common Pleas, ECF No. 47, neither the Westmoreland County Courts generally nor the Court of Common Pleas were named as Defendants in the Second Amended Complaint. ECF No. 25. Moreover, not only was a Motion to Dismiss Summons in a Civil Complaint, ECF No. 48, filed in an apparent abundance of caution on behalf of Westmoreland County Court of Common Pleas, and granted by this Court on September 24, 2014, ECF No. 53, but on September 19, 2014, Plaintiff himself filed a Motion to Dismiss Westmoreland County Courts as a defendant indicating he no longer wished to pursue this action against them. ECF Nos. 51, 53. As such, neither Mr. Kline nor the Westmoreland County Courts are presently a party to this action.

pick up," which resulted in Plaintiff having to serve an additional eighteen days of "unlawful imprisonment" in a Pennsylvania jail.

Presently before the Court is a Motion to Dismiss the Second Amended Complaint submitted by the County and Cmar, ECF No. 29, and a Motion to Dismiss Plaintiff's Second Amended Complaint submitted by Court Administrator Paul Kuntz. ECF No. 33. For the reasons that follow, both Motions will be granted.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

According to the Second Amended Complaint, Plaintiff was arrested and brought to Pennsylvania from his home in North Carolina and unlawfully detained for 222 days, or until July 3, 2013, when Judge Blahovec of the Westmoreland County Court of Common Pleas dismissed the charges brought against Plaintiff based on a lack of jurisdiction. ECF No. 25, ¶ 7; ECF No. 25-1. Because Plaintiff had criminal charges pending in the State of Florida, and had previously waived extradition on those charges, Judge Blahovec also ordered that Plaintiff was to be "discharged to his extradition detainer" and "made available for prompt pick-up by the demanding state." ECF No. 25, ¶¶ 7-8; ECF No. 25-1. Plaintiff presently complains that, despite the fact that Judge Blahovec dismissed the charges against Plaintiff on July 3, 2013, the State of Florida was not notified until July 21, 2013, that Plaintiff was available to be transferred. Plaintiff contends that the eighteen days that he was held in the Westmoreland County Prison before Florida was notified of his availability for transfer violated Pennsylvania law pertaining to extradition and interstate extradition laws, which Plaintiff contends require the extraditing state to make arrangements for pick up within ten days of the disposition of any local charges. ECF No. 25, ¶ 8.[2]

---

[2] It should be noted here that the initial 222 days that Plaintiff claims he was unlawfully detained were the subject of Civil Action No. 13-1021, which Plaintiff filed on July 16, 2013. In a Report and Recommendation filed by the

2

More specifically, Plaintiff alleges that Defendant Kuntz is responsible for his "illegal incarceration of 18 days longer than he should have been in a Pennsylvania jail by intentionally or negligently with reckless disregard, not forwarding the proper paperwork and documents to the Clerk of Courts in a timely manner . . . ," and that Defendant Cmar is responsible for his "illegal incarceration of 18 days longer than he should have been in Westmoreland County Prison by intentionally or negligently with reckless disregard by unlawfully imprisoning Plaintiff for 18 days after all charges were dismissed against him and by not contacting the State of Florida as ordered by the Courts in a timely manner . . . ." ECF No. 25, ¶¶ 9, 11. Plaintiff also alleges that the County "is responsible for the false imprisonment of Plaintiff" because it is the employer of both Kuntz and Cmar and thus is responsible for their actions and/or inaction. ECF No. 25, ¶ 12. In addition, Plaintiff contends that Defendants Kuntz and Cmar conspired "with others" to keep him unlawfully incarcerated. ECF No. 25, ¶¶ 13, 14, 16.

Plaintiff initiated this action on August 5, 2013, by filing a Motion for Leave to Proceed In Forma Pauperis. ECF No. 1. The Complaint was filed on January 6, 2014, ECF No. 5, and on March 28, 2014, Plaintiff filed an Amended Complaint. ECF No. 19. On April 23, 2014, Plaintiff filed a Second Amended Complaint, ECF No. 25, which is now the operative complaint, bringing claims against Defendants for false imprisonment and conspiracy. On June 12, 2014, the County and Cmar filed a Motion to Dismiss Second Amended Complaint. ECF No. 29. On July 7, 2013, Plaintiff filed a brief in Opposition to the Motion to Dismiss filed by Defendants the County and Cmar, ECF No. 39, and an Exhibit in Support of his brief in Opposition on July

---

undersigned on October 20, 2014, it was recommended that the Motions to Dismiss filed by the defendants in that case be granted and that the First Amended Complaint be dismissed with prejudice. Id. at ECF No. 61. Plaintiff subsequently filed objections to the Report and Recommendation as well as a Motion for Leave to File a Second Amended Complaint. Id. at ECF Nos. 62, 63. Before either the objections or the Motion for Leave to File a Second Amended Complaint were ruled upon, however, Plaintiff filed a Motion to Voluntarily Dismiss Lawsuit in which he indicated that he no longer wished to pursue the federal lawsuit and that he would pursue his claims in state court. Id. at ECF No. 70. That Motion was granted and the case was dismissed without prejudice on November 17, 2014. Id. at ECF Nos. 71, 72.

8, 2014. ECF No. 40. On June 17, 2014, Defendant Kuntz filed a Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 33, and on June 27, 2014, Plaintiff filed a brief in Opposition to Defendant Kuntz's Motion to Dismiss. ECF No. 38. As such, both the Motion to Dismiss filed by Defendants the County and Kuntz and the Motion to Dismiss filed by Defendant Kuntz are ripe for review.

## II. STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts

4

suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

III. **DISCUSSION**

Plaintiff has brought his claims pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423. Here, Plaintiff brings his claims for false imprisonment and conspiracy under the Fourth Amendment to the Constitution. See ECF No. 39, ¶ 7.

A. **False Imprisonment**

To state a claim for false imprisonment, a plaintiff must establish: (1) that he or she was detained; and (2) that the detention was unlawful. James v. City of Wilkes-Barre, 700 F.3d 675, 682-83 (3d Cir. 2012), *quoting* Wallace v. Kato, 549 U.S. 384, 389 (2007) ("[t]he sort of unlawful detention remediable by the tort of false imprisonment is detention without legal process"). A claim for false imprisonment based on unlawful detention may be found only

5

where the delay in being released from prison is unreasonable. Regan v. Upper Darby Twp., 2009 WL 650384, at *11–12 (E.D. Pa. Mar.11, 2009), *aff'd,* 363 F. App'x 917 (3d Cir. 2010), *citing* Burgess v. Roth, 387 F. Supp. 1155, 1161-62 (E.D. Pa. 1975) ("[o]nly an unreasonable delay in a prisoner's release will result in the tort of false imprisonment. Only such a delay will justify a finding of a constitutional violation under § 1983"). Thus, to survive a motion to dismiss a plaintiff must plead sufficient facts to show that the delay in releasing him or her from prison was unreasonably long.

In the instant case, Defendant Cmar argues that Plaintiff's claims for false imprisonment should be dismissed as to him because the delay of eighteen days was not an unreasonable period of time and that Cmar, as the Deputy Warden of the Westmoreland County Prison, was not the proper authority to effectuate Plaintiff's release from jail and/or transfer to Florida. Cmar also argues that he is entitled to quasi-judicial immunity as well as qualified immunity regardless of the delay in notifying the State of Florida that Plaintiff was available to be transferred. Similarly, Defendant Kuntz, as the Court Administrator for the Court of Common Pleas of Westmoreland County, argues that he is entitled to quasi-judicial immunity and that, to the extent Plaintiff has sued him in his official capacity, those claims should nevertheless be dismissed because they are barred by the Eleventh Amendment to the Constitution and because he is not considered a "person" within the meaning of Section 1983.

Because this Court finds that Defendants Cmar and Kuntz are entitled to qualified immunity, it need not, and has not, addressed the Defendants' other arguments with respect to Plaintiff's claim for false imprisonment.[3]

---

[3] Although Defendant Kuntz does not specifically argue that he is entitled to qualified immunity, as opposed to quasi-judicial immunity, the analysis is equally applicable to him.

"The qualified immunity doctrine 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012), *quoting* Pearson v. Callahan, 555 U.S. 223, 231 (2009). See Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010). Because "[q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law,' so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Id., *quoting* Malley v. Briggs, 475 U.S. 335, 341 (1986). See Pearson v. Callahan, 555 U.S. at 244; Ray v. Twp. of Warren, 626 F.3d at 173–74.

The United States Supreme Court has established a two-part analysis to determine whether an official is entitled to qualified immunity: (1) whether the plaintiff has alleged facts that demonstrate a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). See Sharp v. Johnson, 669 F.3d at 159. The first question "is not a question of immunity, but whether there is any wrong to address." Ray v. Twp. of Warren, 626 F.3d at 174. Further, "clearly established rights" are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right. McLaughlin v. Watson, 271 F.3d 566, 571 (3d Cir. 2001). If the plaintiff fails to satisfy either prong, the defendant is entitled to judgment as a matter of law. Pearson v. Callahan, 555 U.S. at 236. See James v. City of Wilkes-Barre, 700 F.3d at 679. Here, the Court finds that Plaintiff has failed to allege sufficient facts in the Second Amended Complaint to satisfy either prong of the qualified immunity analysis and that Plaintiff's claims for false imprisonment brought against Defendants Cmar and Kuntz are properly dismissed.

7

The Court notes at the outset that the basis of Plaintiff's claim is that he was detained in a Pennsylvania jail for eighteen days longer that he should have been as evidenced by the fact that the charges pending against him in Pennsylvania were dismissed on July 3, 2013, and Florida was not notified until July 21, 2013 -- eighteen days later -- that Plaintiff was available to be tranferred.[4] Plaintiff, however, acknowledges that the State of Florida had ten days from the date the charges in Pennsylvania were dismissed, or until July 13, 2013, to retrieve Plaintiff. ECF No. 25, ¶ 8. Thus, the delay, if any, was only eight days and not eighteen. See Burgess v. Roth, 387 F. Supp. at 1161 ("duty to [a] prisoner is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained").

More importantly, however, any delay in notifying Florida that Plaintiff was available for transfer did not delay Plaintiff's release from custody. Rather, as Plaintiff concedes, the delay merely postponed his transfer from confinement in Pennsylvania to confinement in Florida where he faced charges of "Aggravated Battery (pregnant woman) and Battery (Second of Subsequent Offense) (Domestic Violence)." ECF No. 31-1. See ECF No. 39, ¶ 28 ("[i]f the defendant's [sic] would have notified the State of Florida as instructed by Judge Blahovec's orders, the plaintiff would of technically been in the custody of the State of Florida, awaiting transport"). Because only an unreasonable delay in being *released* from prison gives rise to a constitutional violation, Plaintiff has failed to state a claim for false imprisonment. See Burgess v. Roth, 387 F. Supp. at 1161 ("[o]nly an unreasonable delay in a prisoner's *release* will result in the tort of false imprisonment [and] justify a finding of a constitutional violation . . . .") (emphasis added). In this manner, the cases relied upon by Plaintiff are easily distinguishable as the plaintiffs in those cases were detained beyond the date they were to be released from custody

---

[4] Although it is unclear from the record precisely when Plaintiff was picked up by the Florida authorities, Plaintiff complains only of the delay in notifying the State of Florida that he was available for extradition and not any additional time it may have taken the Florida authorities to actually effectuate his transfer.

altogether. See McGee v. Carrillo, 297 Fed. App'x 319 (5th Cir. 2008); Powell v. Barrett, 376 F. Supp. 2d 1340 (N.D. Ga. 2007); Allen v. Guerrero, 276 Wis. 2d 679, 688 N.W. 2d 673 (Wis. Ct. App. 2004).

Moreover, as argued by Defendants, the Federal Extradition Act provides that:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

18 U.S.C. § 3182. Because the federal extradition statute allows thirty days for the demanding state to retrieve its fugitive, it cannot be said that the eighteen days at issue in this case is unreasonable or that it constitutes a constitutional violation. See Com. v. Quackenbush, 291 Pa. Super. 209, 215-17, 435 A.2d 872, 875 (1982), *quoting* Com. ex rel. Meyers v. Case, 250 Pa. Super. 242, 248, 378 A.2d 917, 920 (1977) (declining to discharge the prisoner even though the governor's warrant was executed fifteen days after the 90-day maximum period to hold a prisoner had elapsed because the violation was merely technical and there was substantial compliance with the Uniform Criminal Extradition Act). See also Martinez v. Sun, 896 F. Supp. 2d 710, 722 (N.D. Ill. 2012), *quoting* Scull v. New Mexico, 236 F.3d 588, 596 (10th Cir. 2000) ("[a]n alleged fugitive who waives extradition has 'neither a constitutional not statutory right to specific extradition procedures'").

Even if it could be said that a constitutional violation occurred, however, the Court finds that the absence of any clearly established guidelines or rules governing the appropriate length of detention prior to notifying a demanding state that a fugitive from that state is available to be transferred, is fatal to Plaintiff's claims. Although Plaintiff asserts in the Second Amended Complaint and in his brief in Opposition to the Motion to Dismiss filed by the County and Cmar that under Pennsylvania law pertaining to extradition and interstate extradition laws, the State of Florida had ten days from the date the charges in Pennsylvania were dismissed to pick him up, Plaintiff has not pointed to any specific statutory provision or rule, or any other authority, to support his position. Nor has this Court found any such authority. To the contrary, the Uniform Extradition Act, 42 Pa. C.S.A. §§ 9121, *et seq*. ("the Act"), which has been adopted by Pennsylvania, provides only that when, as here, a defendant has waived extradition to a demanding state, the judge shall direct that the defendant be delivered "forthwith" to the agent of the demanding state. Id. at § 9146(b). Although Pennsylvania Courts have interpreted "forthwith" as being within a "reasonable period of time," what is reasonable or, more accurately, unreasonable under the circumstances of a particular case, is equally undefined and unclear. See Com. v. Smith, 562 Pa. 609, 616, 757 A.2d 354, 358 (2000), *citing* East & West Coast Service Corp. v. Papahagis, 344 Pa. 188, 25 A.2d 341 (1942) ("the Superior Court cogently reasoned that forthwith has been defined in other settings to include a reasonable period of time ... [which is] consistent with case law from this court, which has used "forthwith" and "within a reasonable time" interchangeably").

Moreover, as stated by the District Court for the Northern District of Illinois,

> Neither side has cited, nor are we aware of, any case or statute establishing limits on the time that a suspect may be detained following a waiver of extradition. The significant delays built into the extradition process tend to undercut plaintiff's argument that his 18–day detention

> violated the Constitution. As we just discussed, an alleged fugitive may be held for a significant period of time pending a governor's warrant for his arrest and extradition. In addition, under the federal extradition statute, a formal demand for extradition triggers a 30–day period for agents in the demanding state to take custody of the alleged fugitive. *See* 18 U.S.C. § 3182.

Martinez v. Sun, 896 F. Supp. 2d at 723. Thus, it appears clear that there are no clearly established laws or rules that dictate the appropriate amount of time that a prisoner, particularly one in Plaintiff's circumstances, must be extradited to another state. Moreover, to the extent that the Federal Extradition Act provides clear guidelines in this regard, the eight days -- or even eighteen days -- it took to notify the Florida authorities that Plaintiff was available to be transferred is within the 30-day time frame provided for under that statute.[5] Plaintiff therefore has failed to plead sufficient facts to show that the eighteen days between the date the charges pending against him in Pennsylvania were dismissed and the date that Florida was notified that Plaintiff was available to be picked up was either unreasonable or in violation of a clearly established statutory or constitutional right. As such, Defendants Cmar and Kuntz are entitled to qualified immunity and Plaintiff's claims for false imprisonment brought against them are properly dismissed.

    **B.    Conspiracy**

In order to prevail on a conspiracy claim under Section 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right."

---

[5] The Court notes here that in Plaintiff's brief in Opposition to the Motion to Dismiss filed by Defendants Cmar and the County, Plaintiff appears to acknowledge that the ten day requirement upon which he relies is not found in the Act or any other laws relative to extradition, but is merely the time frame set forth by Judge Blahovec in his Order of April 30, 2013, ECF No. 31-2, in which he granted extradition to the State of Florida following the issuance of the Pennsylvania Governor's Warrant and Plaintiff's waiver of extradition. ECF No. 39, ¶ 28. Noting that the charges pending in Pennsylvania prevented Plaintiff's immediate return to Florida, Judge Blahovec ordered that "[t]he State of Florida shall have ten (10) days from the date of disposition of the local charges to pick up the Defendant and return him to the State of Florida." ECF No. 31-2. A court's order setting forth a deadline, however, does not establish a statutory or constitutional right. Moreover, the failure to comply with a court order, without more, does not rise to the level of a constitutional violation in the first instance.

11

Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999), *superseded by statute on other grounds as stated in* P.P. ex rel. Michael P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009). Establishing the existence of a conspiracy requires concerted action and the existence of an agreement. Watson v. Sec'y Pa. Dep't of Corr., 436 F. App'x 131, 137 (3d Cir. 2011), *citing* Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). Thus, to state a claim for conspiracy under Section 1983, "a plaintiff must allege the specific conduct violating his or her rights, the time and place of that conduct, and the identity of the responsible officials." Harmon v. Delaware Sec'y of State, 154 F. App'x 283, 284 n.3 (3d Cir. 2005), *citing* Oatess v. Sobolevitch, 914 F.2d 428, 431 n.8 (3d Cir. 1990). Because "'thelinchpin for conspiracy is agreement' . . . concerted action, without more, cannot suffice to state a conspiracy claim." Watson v. Sec'y Pa. Dep't of Corr., 436 F. App'x at 137, *quoting* Bailey v. Bd. of Cnty. Comm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992). See Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970) ("[t]o constitute a conspiracy, there must be a 'meeting of the minds'"). See Michtavi v. U.S., 345 F. App'x 727, 731 (3d Cir. 2009) ("Michtavi based his civil conspiracy claim upon the conclusory allegation that prison officials agreed to act against him. Without more, the bare allegation of an agreement is insufficient to sustain a conspiracy claim"); Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir.1998) (conclusory allegations of concerted action are insufficient for a § 1983 conspiracy claim).

In the instant case, the Second Amended Complaint is completely devoid of any facts to support Plaintiff's claim of conspiracy. Indeed, Plaintiff has alleged only that Defendants "acted in concert" and "conspired with others" to keep him illegally incarcerated. ECF No. 25, ¶¶ 13,

14, 16. These bald assertions are nothing more than conclusory statements and are insufficient to state a claim for conspiracy. As such, Plaintiff's claims for conspiracy will be dismissed.

C. **Defendant Westmoreland County**

Having found that Plaintiff is unable to proceed against either Defendants Cmar or Kuntz on the underlying claims of false imprisonment and conspiracy, it follows that the County cannot be held liable for the alleged constitutional violations either. This notwithstanding, Plaintiff has nevertheless failed to plead sufficient facts to state a claim against the County.

It is well settled that settled that a municipality may not be held liable under Section 1983 based on a theory of *respondeat superior* or merely because its employees may have acted unconstitutionally. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978). Rather, a municipality may only be found liable for their own illegal acts or where the plaintiff is able to identify a municipal "policy" or "custom" that caused the constitutional violation. Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-04 (1997). See Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) ("[p]olicy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. . . . A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute law") (internal quotations and citations omitted).

In the instant case, Plaintiff has not identified either a policy or a custom pursuant to which the individual Defendants were acting when they allegedly delayed notifying the State of Florida for eighteen days that Plaintiff was available to be transferred. Indeed, the extent of Plaintiff's allegations in the Second Amended Complaint relative to the County are that

Westmoreland County is responsible for the false imprisonment of Plaintiff; that Westmoreland County is the employer of all Defendants; and that Westmoreland County is responsible for the Defendants. ECF No. 25, ¶ 12. It is evident from these assertions that Plaintiff seeks to hold the County liable simply because it employs the individual Defendants which he is unable to do. As such, Plaintiff's claims against the County are properly dismissed as well.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Second Amended Complaint submitted by Defendants the County and Cmar, and the Motion to Dismiss Plaintiff's Second Amended Complaint submitted on Behalf of Court Administrator Paul Kuntz, are properly granted.[6] Accordingly, the following Order is entered:

## **ORDER**

AND NOW, this 27th day of February, 2015, upon consideration of the Motion to Dismiss the Second Amended Complaint submitted by Defendants the County and Cmar, ECF No. 29, and the Motion to Dismiss Plaintiff's Second Amended Complaint submitted on Behalf of Court Administrator Paul Kuntz, ECF No. 33, and Plaintiff's briefs filed in Opposition thereto, ECF Nos. 38, 39, IT IS HEREBY ORDERED that the Motions are GRANTED, and that the Second Amended Complaint is dismissed with prejudice. IT IS FURTHER ORDERED that the Clerk is directed to mark the case closed.

---

[6] Although the United States Court of Appeals for the Third Circuit has held that when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint whether or not the plaintiff has asked to do so, the Court is not required to allow an amended complaint to be filed where it would be inequitable or futile. See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007), citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Here, Plaintiff has already amended his complaint twice. In addition, the Court has determined that Defendants Cmar and Kuntz are entitled to qualified immunity. As such, allowing Plaintiff to file yet another amendment would be both inequitable and futile and the Court declines to do so.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT:


/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE


cc: Brandon Patrick Link
8823 Kestral Ridge Drive
Charlotte, NC 28269

All Counsel of Record Via CM-ECF